***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 *********** EVIDENTIARY MATTERS
Defendants' Motion to Dismiss Plaintiff's Claim pursuant to Rule 613 is HEREBY DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on February 5, 1999.
3. On all relevant dates herein, defendant-employer was insured by ITT Specialty Risk Services.
4. Pursuant to an Industrial Commission Form 22 Wage Chart, plaintiff's average weekly wage on the relevant dates herein was $306.00.
5. At the hearing, the parties agreed that Industrial Commission Forms 19, 33, and 33R and plaintiff's employment file and responses to Defendants' First set of Interrogatories would be entered into the record. Also at the hearing, the parties submitted plaintiff's medical records, which were admitted into the record and marked collectively as Stipulated Exhibit (2).
6. The issues to be determined are as follows:
a. Whether plaintiff sustained an injury by accident arising out of and in the course of her employment on February 5, 1999;
b. If so, to what benefits, if any, is plaintiff entitled; and,
c. If plaintiff did sustain an injury by accident arising out of and in the course of her employment on February 5, 1999, whether her current physical condition and disability is causally related to that injury or to causes and conditions unrelated to her employment.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing, plaintiff was 47 years of age, having been born on July 20, 1954. She attended school until the tenth grade, and has not obtained a GED.
2. Plaintiff was an employee of Interim Services, Inc. (defendant-employer), an employment agency that contracts with companies, such as Moen, to provide workers. On February 5, 1999, plaintiff was working at Moen's New Bern plant as a production associate-line worker. Plaintiff's work involved the handling of boxes packed with faucets for shipping. To perform her job duties, plaintiff was required to lift, pull, and carry loaded boxes from the assembly line and stack them on shipping pallets.
3. At the hearing, plaintiff testified that on February 5, 1999, her duties at Moen changed in that she was moved to an area that required her to lift, move, and stack heavier boxes of faucets than she had previously done. Prior to February 5, 1999, plaintiff had moved boxes containing three faucets from the conveyor to pallets. The boxes weighed approximately thirty-five pounds each. On February 5, 1999, the boxes plaintiff worked with contained six faucets, and weighed approximately fifty pounds. Plaintiff further testified that on the date in question, she bent over to place a loaded box on a pallet, and when she straightened up, she experienced an immediate onset of pain and a sharp pulling sensation in her stomach and lower back.
4. Plaintiff first sought medical attention on February 9, 1999, at the Craven Regional Medical Center's Emergency Room. At that facility, plaintiff reported experiencing left flank pain following the lifting of heavy boxes. Plaintiff was diagnosed with muscle strain and advised to follow up with her family doctor, Dr. Neil Bender. Plaintiff was then seen by Dr. Bender on February 12, 1999, and reported experiencing severe low back pain that began at first as a sharp pain in her stomach. Following his examination of plaintiff, Dr. Bender diagnosed her as having a possible back strain and prescribed anti-inflammatory medication. Additionally, Dr. Bender removed plaintiff from work for the remainder of the week, and advised her to return to his office at the beginning of the next week for a follow-up appointment.
5. Upon referral, on February 23, 1999, plaintiff was examined by Dr. Max Kasselt, an orthopedist. In his note from that date, Dr. Kasselt indicates that plaintiff was injured while stacking boxes weighing approximately fifty (50) pounds each. Following his examination of plaintiff, Dr. Kasselt diagnosed plaintiff with having low back pain following a work-related event, and advised her not to return to work while on the medication prescribed by Dr. Bender.
6. On February 24, 1999, an MRI was performed, which revealed a bulging disc. Dr. Mark Adkins, a radiologist, reviewed the MRI results and opined that plaintiff might have a left sided L4-L5 lateral foraminal disc herniation. On that date, Dr. Kasselt advised plaintiff to return to work on that date for two hours, and to begin working light duty the following day. Additionally, Dr. Kasselt recommended to plaintiff that she undergo an assessment by Dr. Gregory Gridley, a psychologist.
7. Plaintiff met with Dr. Gridley, who administered a standard MMPI-2 personality test. Dr. Gridley opined that the results of that test were indicative of a severe somatization disorder, which would cause a general ineffectiveness in dealing with life. Dr. Gridley also noted that plaintiff was experiencing substantial difficulties with her child and grandchild, and that she expressed the desire to have some time off work to deal with her general life problems. Dr. Gridley opined that plaintiff could find no other way to secure time off from work other than to describe physical distress, and recommended that she return to work.
8. Plaintiff was advised by Dr. Kasselt to continue treating with Dr. Bender because of Dr. Bender's role in managing her pain medications. On February 25, 1999, plaintiff returned to Dr. Bender. At that time, Dr. Bender removed plaintiff from work for an additional week as the result of her ongoing pain and the lack of suitable, light-duty work.
9. On her own, plaintiff began treating with Dr. David Donnelly, a chiropractor, on March 2, 1999. Dr. Donnelly's treatments did reduce plaintiff's pain. Dr. Donnelly diagnosed plaintiff as having a lumbar disc protrusion with muscle spasms, and opined that she was unable to return to work due to her condition, which he opined was the result of her work-place injury on February 5, 1999. Dr. Donnelly's opinions are based on his treatment of plaintiff as well as the radiologist's MRI report, which noted a bulging disc. Dr. Donnelly continued to treat plaintiff through June 13, 2002, and opined that throughout that period plaintiff was unable to work due to her injury and condition.
10. Plaintiff has also been evaluated by Dr. Mark Held, a neurosurgeon. Based on the MRI reports, Dr. Held opined that plaintiff had sustained an L4 left nerve root compression. Dr. Held noted that plaintiff's L4 nerve root irritation could be causing her pain, but did not give an opinion as to whether that condition was causally related to any work-place incident. Because Dr. Held did not believe plaintiff was a candidate for surgical intervention, he referred her to Dr. John Robertson for treatment of her chronic pain
11. Dr. Robertson initially examined plaintiff on August 5, 1999, and continued treating her through November 15, 2000. Based upon his treatment of plaintiff, Dr. Robertson opined that she may have fibromyalgia or a degenerative disc disease. During his deposition, Dr. Robertson testified that he could find no objective signs to explain plaintiff's complaints of pain, and noted possible symptom magnification. MRIs and a nerve conduction study performed at the request of Dr. Robertson returned normal results. Dr. Robertson also expressed his agreement with the opinion of Dr. Gridley that plaintiff had an inability to deal with life problems, that she wanted some time off work, and that she found no other way to obtain that other than to describe physical distress. However, Dr. Robertson testified to a reasonable degree of medical certainty that plaintiff's work-place injury of February 5, 1999, possibly could have caused her chronic pain condition. Dr. Robertson further opined that during the time he treated plaintiff that she was unable to work due to her condition and pain.
12. Upon referral by Dr. Donnelly, plaintiff was also treated by Dr. Brian J. Battersby Jr., an orthopaedic surgeon, who diagnosed her as having chronic pain. Dr. Battersby's treatment plan was to get plaintiff off nicotine, narcotic medication, and substitute those with an exercise program to strengthen her. Dr. Battersby has opined to a reasonable degree of medical probability that plaintiff will continue to experience pain and that she was unable to return to work. Regarding the issue of causation, Dr. Battersby testified that based upon plaintiff's MRI results, history, and examinations that he did not believe there was a causal relationship between any work-place injury and her pain complaints.
13. On 5 February 1999, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned.
14. The Full Commission finds that the credible evidence of record establishes that plaintiff sustained her back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration.
15. The medical opinions rendered by Dr. Robertson and Dr. Gridley are sufficient upon which to find a causal relationship between plaintiff's February 5, 1999, injury by accident and her ongoing pain and physical problems. Thus, the Full Commission finds that plaintiff's ongoing pain and physical problems are the natural result of, or related to, her February 5, 1999 injury by accident.
16. Plaintiff has sustained a period of temporary total disability from February 5, 1999, through the date of the hearing before the Deputy Commissioner and continuing.
17. On 5 February 1999, plaintiff's average weekly wage was $306.00, yielding a compensation rate of $204.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned on February 5, 1999. N.C. Gen. Stat. § 97-2(6). The credible evidence of record is sufficient upon which to conclude that she sustained her back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration.Fish v. Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233, (1994), cert. denied, 339 N.C. 737, 449 S.E.2d 233, 237 (1994).
2. Plaintiff is entitled to have defendants pay her temporary total disability compensation at the rate of $204.00 per week from February 5, 1999, through the hearing before the Deputy Commissioner, and continuing until further order of the Commission, as a result of her February 5, 1999, injury by accident in the form of a specific traumatic incident. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants pay for medical expenses as reasonably necessary to provide a cure, give relief, or lessen the period of disability, as a result of her February 5, 1999, injury by accident in the form of a specific traumatic incident. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Defendants are entitled to a credit for any wages or benefits paid to plaintiff during her period of temporary total disability. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability in the amount of $204.00 per work, beginning on February 5, 1999, and continuing until further order of the Commission, subject to an attorney's fee as awarded herein. Defendant shall pay to plaintiff in lump sum the portion of such award that has accrued.
2. Defendants shall provide medical compensation to plaintiff for any treatment related to the February 5, 1999, incident that is reasonably necessary to provide a cure, give relief, or lessen her period of disability.
3. Defendants shall pay to directly to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph 1 of this award. Defendant shall pay to plaintiff's counsel in lump sum the portion of such fees that has accrued.
4. Defendants shall receive a credit for any wages or benefits paid to plaintiff during her period of temporary total disability.
5. Defendants shall pay the costs.
This 15th day of March 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER